# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

_____

No. 23-1555

DANIEL E. HALL, a/k/a Sensa Verogna,

Plaintiff – Appellant,

v.

TWITTER, INC.,

Defendant – Appellee.

_____

On Appeal from a Judgment of the
United States District Court for the
District of New Hampshire

_____

## DEFENDANT–APPELLEE'S BRIEF

Kenneth M. Trujillo-Jamison
WILLENKEN LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, California 90017
Tel: (213) 955-9240
Fax: (213) 955-9250

_Attorneys for Defendant–Appellee_

## **CORPORATE DISCLOSURE STATEMENT**

Under Federal Rule of Appellate Procedure 26.1, defendant-appellee X Corp., as successor in interest to named defendant Twitter, Inc., states Twitter, Inc. has been merged into X Corp. and no longer exists. X Corp. is a privately held corporation. Its parent corporation is X Holdings Corp. No publicly traded corporation owns 10% or more of the stock of X Corp. or X Holdings Corp.

# <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

PRELIMINARY STATEMENT.................................................................1

JURISDICTIONAL STATEMENT .........................................................3

ISSUES PRESENTED ...........................................................................4

STATEMENT OF THE CASE ................................................................5

I.      X Corp.'s User Agreement, Terms of Service, and Rules...............5

II.     Hall's Twitter Content Led to His Suspension ...............................6

III.    Hall Filed His Complaint.................................................................7

IV.    The District Court Dismissed the Complaint..................................9

V.     The Court's Orders on Other Motions That Hall Appeals.............9

SUMMARY OF THE ARGUMENT .......................................................12

ARGUMENT .........................................................................................15

I.   The District Court Did Not Err In Dismissing Hall's Complaint....15

        A.      Standard of Review ...........................................................15

        B.      The District Court Correctly Held that Hall Fails to
                State Any Plausible Claim Upon Which Relief May Be
                Granted................................................................................16

                1.      Hall Fails to State a Plausible Section 1981
                        Claim ......................................................................16

                2.      Hall Fails to State Plausible Title II and RSA
                        354-A:17 Claims......................................................19

                3.      Hall Fails to Plausibly Allege the Violation of
                        Any Constitutional Right.........................................22

a.    Hall Fails to Plausibly Allege His Account Was Suspended Based on Any State Privilege, Right, or Rule .....................................24

b.    Hall Fails to Plausibly Allege X Corp. Acted as a State Actor When It Suspended His Account...............................................................26

    i)    Suspending an Account on a Private Platform Is Not an Exclusive Government Function...............................26

    ii)    Congress Did Not "Compel" X Corp. to Suspend Hall.............................................31

    iii)    X Corp. and Congress Did Not Take "Joint Action" to Suspend Hall's Twitter Account ........................................34

C.    This Court May Affirm Dismissal on Other Bases the District Court Declined to Reach ............................................ 35

    1.    Section 230 Provides X Corp. Immunity from Hall's Claims ..............................................................36

        a.    X Corp. Is an "Interactive Computer Service" Provider.................................................38

        b.    Hall's Account and Content Are "Information Provided by Another Information Content Provider"..........................39

        c.    Hall's Claims Seek to Impose Liability on X Corp. as a "Publisher"........................................41

        d.    Section 230 Is Constitutional ............................43

            i)    Section 230 Is Clear and Does Not Restrict Speech ........................................44

ii)    Section 230 Does Not "Confer" Any "Sovereign Power" on X Corp. .................46

iii)   Congress Had Authority Under the Commerce Clause to Enact Section 230 .........................................................47

2.    The First Amendment Bars Hall's Claims, Which Hall Does Not Oppose ................................48

II.   The District Court Did Not Abuse Its Discretion by Denying Hall's Various Pre- and Post-Judgment Motions ...........................................50

A.   Standard of Review .............................................51

B.   The District Court Did Not Abuse Its Discretion in Its November 30, 2022 Order ....................................52

C.   The District Court Did Not Abuse Its Discretion in Its Recusal Order ....................................................54

D.   The District Court Did Not Abuse Its Discretion in Its Post-Judgment Order .............................................58

1.    The District Court Properly Denied Hall's Motion for Reconsideration ........................................58

2.    The District Court Properly Denied Hall's Rule 60(b) Motions ..............................................59

CONCLUSION ........................................................62

CERTIFICATE OF COMPLIANCE .......................................63

CERTIFICATE OF SERVICE ..........................................64

# <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

## Cases

*Al-Ahmed v. Twitter, Inc.*,
603 F. Supp. 3d 857 (N.D. Cal. 2022), *appeal dismissed*,
No. 22-15914, 2022 WL 4352712 (9th Cir. July 7, 2022) ..............39, 40

*Alberto San, Inc. v. Consejo De Titulares Del Condominio San
Alberto*, 522 F.3d 1 (1st Cir. 2008) ......................................................23

*Amoah v. McKinney*,
875 F.3d 60 (1st Cir. 2017) ................................................................51

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................15

*Barnes v. Yahoo!, Inc.*,
570 F.3d 1096 (9th Cir. 2009), *as amended*, (Sept. 28, 2009) .......41, 42

*Berenson v. Twitter, Inc.*,
No. C 21-09818 WHA, 2022 WL 1289049 (N.D. Cal.
Apr. 29, 2022) .............................................................................23, 31

*Bixler v. Foster*,
596 F.3d 751 (10th Cir. 2010).............................................................51

*Blum v. Yaretsky*,
457 U.S. 991 (1982).............................................................................32

*Brittain v. Twitter*, Inc.,
No. 19-16622, 2020 WL 4877527 (9th Cir. Mar. 6, 2020) ..................38

*Brittain v. Twitter, Inc.*,
No. 19-CV-00114-YGR, 2019 WL 2423375 (N.D. Cal.
June 10, 2019)....................................................................................38

*Burnap v. Somersworth Sch. Dist.*,
172 N.H. 632 (2019).............................................................................20

iv

*Cofield v. Fed. Nat. Mortg. Ass'n*,
    125 F.3d 841 (1st Cir. 1997) ............................................................. 61

*Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*,
    140 S. Ct. 1009 (2020) ...................................................................... 17

*Dartmouth Rev. v. Dartmouth Coll.*,
    709 F. Supp. 32 (D.N.H. 1989), *aff'd*, 889 F.3d 13 (1st Cir. 1989) 18, 19

*Davison v. Facebook, Inc.*,
    370 F. Supp. 3d 621 (E.D. Va.), *aff'd,* 774 F. App'x 162 (4th
    Cir. 2019), *cert denied*, 140 S. Ct. 1111 ....................................... 28, 33

*Doe v. Google LLC*,
    No. 21-16934, 2022 WL 17077497 (9th Cir. Nov.
    18, 2022) ..................................................................................... 32, 33

*Drake v. Mitch Rosen Extraordinary Gunleather, LLC*,
    No. 16-CV-527-JL, 2017 WL 1076396 (D.N.H. Jan.
    17, 2017) .......................................................................................... 17

*Exxon Shipping Co. v. Baker*,
    554 U.S. 471 (2008) ........................................................................... 59

*Fair Hous. Council of San Fernando Valley v. Roommates.Com*,
    *LLC*, 521 F.3d 1157 (9th Cir. 2008) ............................................ 29, 38

*Flagg Bros., Inc. v. Brooks*,
    436 U.S. 149 (1978) ........................................................................... 29

*Force v. Facebook, Inc.*,
    304 F. Supp. 3d 315 (E.D.N.Y. 2018), *aff'd in part, dismissed in part*,
    934 F.3d 53 (2d Cir. 2019), *cert denied*, 140 S. Ct. 2761 (2020) ......... 41

*Freedom Watch, Inc. v. Google Inc.*,
    816 F. App'x 497 (D.C. Cir. 2020) .................................................... 30

*Freedom Watch, Inc. v. Google, Inc.*,
    368 F. Supp. 3d 30 (D.D.C. 2019), *aff'd*, 816 F. App'x 497
    (D.C. Cir. 2020) ................................................................................ 23

*Garrett v. Tandy Corp.*,
  295 F.3d 94 (1st Cir. 2002) ................................................................ 16

*Giroux v. Fed. Nat. Mortg. Ass'n*,
  810 F.3d 103 (1st Cir. 2016) .............................................................. 52

*Goldstein v. Galvin*,
  719 F.3d 16 (1st Cir. 2013) ................................................................ 22

*Green v. America Online (AOL)*,
  318 F.3d 465 (3d Cir. 2003) ............................................... 28, 37, 47

*Hammond v. Kmart Corp.*,
  733 F.3d 360 (1st Cir. 2013) ............................................................. 15

*HippoPress, LLC v. SMG*,
  150 N.H. 304 (2003) ........................................................................... 22

*Hummasti v. Republic of Pakistan*,
  No. 3:21-CV-01852-MO, 2022 WL 74218 (D. Or. Jan. 7, 2022), *aff'd*,
  No. 22-35091, 2022 WL 17761081 (9th Cir. Dec. 19, 2022) ............... 23

*J.P.E.H. v. Hooksett Sch. Dist.*,
  No. CIV. 07-CV-276-SM, 2009 WL 703238 (D.N.H.
  Mar. 18, 2009) ........................................................................... 56, 57

*Jarvis v. Vill. Gun Shop, Inc.*,
  805 F.3d 1 (1st Cir. 2015) ....................................................... 22, 26, 34

*Kashelkar v. Bluestone*,
  306 F. App'x 690 (2d Cir. 2009) ........................................................ 19

*Keating v. Carey*,
  706 F. 2d 377 (2d Cir. 1983) ............................................................. 18

*Kennedy v. Google LLC*,
  No. 23-CV-03880-TLT, 2023 WL 5440787 (N.D. Cal.
  Aug. 23, 2023) ..................................................................................... 25

*King v. Facebook*, Inc.,
    No. 19-CV-01987-WHO, 2019 WL 4221768 (N.D. Cal.
    Sept. 5, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021) .................. 40, 42

*Lemelson v. U.S. Bank Nat'l Ass'n*,
    721 F.3d 18 (1st Cir.2013) .................................................................. 15

*Lewis v. Google LLC*,
    461 F. Supp. 3d 938 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723
    (9th Cir. 2021) .............................................................................. 27, 46

*Lewis v. Google LLC*,
    851 F. App'x 723 (9th Cir. 2021) ...................................................... 21, 45

*Logue v. Dore*,
    103 F.3d 1040 (1st Cir. 1997) ............................................................ 56

*Lugar v. Edmonson Oil Co., Inc.*,
    457 U.S. 922 (1982).......................................................................... 23, 26

*Mac Isaac v. Twitter, Inc.*,
    557 F.Supp.3d 1251 (S.D. Fla. 2021)................................................ 49

*Manhattan Cmty. Access Corp. v. Halleck*,
    587 U.S. ___, 139 S. Ct. 1921 (2019) ................................ 26, 29, 30, 31

*Markel Am. Ins. Co. v. Diaz-Santiago*,
    674 F.3d 21 (1st Cir. 2012) ........................................................... 52, 59

*Martillo v. Twitter Inc.*,
    No. CV 21-11119-RGS, 2021 WL 8999587 (D. Mass. Oct. 15, 2021),
    *aff'd*, No. 21-1921, 2022 WL 18862030 (1st Cir. Oct. 4,
    2022), *cert. denied*, 143 S. Ct. 779, 215 L. Ed. 2d 48 (2023) ....... passim

*Monsarrat v. Newman*,
    28 F.4th 314 (1st Cir. 2022) ............................................ 36, 37, 38, 39

*Morton v. Twitter, Inc.*,
    No. CV 20-10434-GW-JEMX, 2021 WL 1181753 (C.D.
    Cal. Feb. 19, 2021) ........................................................................ 38

*Murphy v. Twitter, Inc.,*
  60 Cal. App. 5th 12 (2021) ................................................................42

*NetChoice, LLC v. Attorney Gen, Fla.,*
  34 F.4th 1196 (11th Cir. 2022) ...................................................28, 49

*O'Handley v. Padilla,*
  579 F. Supp. 3d 1163 (N.D. Cal. 2022) ............................................49

*O'Handley v. Weber,*
  No. 22-15071, 2023 WL 2443073 (9th Cir. Mar. 10,
  2023).................................................................................................23

*O'Handley v. Weber,*
  62 F.4th 1145 (9th Cir. 2023) .................................................... passim

*Powe v. Boykins,*
  810 F. App'x 331 (5th Cir. 2020) ......................................................54

*Prager Univ. v. Google LLC,*
  951 F.3d 991 (9th Cir. 2020) .............................................................31

*Rutenburg v. Twitter, Inc.,*
  No. 4:21-CV-00548-YGR, 2021 WL 1338958 (N.D. Cal.
  Apr. 9, 2021), *aff'd,* No. 21-16074, 2022 WL 1568360 (9th Cir.
  May 18, 2022) ...................................................................................25

*Rutenburg v. Twitter, Inc.,* No. 21-16074, 2022 WL 1568360
  (9th Cir. May 18, 2022).....................................................................30

*Sakab Saudi Holding Co. v. Aljabri,*
  58 F.4th 585 (1st Cir. 2023) ..............................................................16

*Town of Norfolk v. U.S. Army Corps of Engineers,*
  968 F.2d 1438 (1st Cir. 1992) ...........................................................51

*Trans-Spec Truck Serv. v. Caterpillar,*
  524 F.3d 315 (1st Cir. 2008) ...............................................................5

*Trump v. Twitter Inc.,*
  602 F. Supp. 3d 1213 (N.D. Cal. 2022), *motion for relief from*

*judgment denied*, No. 3:21-CV-08378-JD, 2023 WL 1997921
(N.D. Cal. Feb. 14, 2023), *appeal filed*, *Trump v. Twitter, Inc.*
(9th Cir. June 28, 2022)....................................................................27

*U.S. v. Hornaday*,
392 F.3d 1306 (11th Cir. 2004)........................................................47

*U.S. v. Kelley*,
712 F.2d 884 (1st Cir. 1983) ................................................55, 56, 57

*U.S. v. Snyder*,
235 F.3d 42 (1st Cir. 2000) ..............................................................57

*United States v. Tavares*,
849 F.3d 529 (1st Cir. 2017) .............................................................48

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*,
478 F.3d 413 (1st Cir. 2007) ................................................37, 38, 39

*White v. Mass. Council of Constr. Emp'rs, Inc.*,
460 U.S. 204 (1983)..........................................................................47

*Wilson v. Port City Air, Inc.*,
No. 13-cv-129-JD, 2013 WL 2631860 (D.N.H. June
12, 2013)...........................................................................................20

*Wolford v. Budd Co.*,
149 F.R.D. 127 (W.D. Va. 1993) .................................................53, 54

*Zeran v. America Online, Inc.*,
129 F.3d 327 (4th Cir. 1997).......................................................37, 47

*Ziencik v. Snap, Inc.*,
2023 WL 2638314 (C.D. Cal. Feb. 3, 2023) .....................................45

## Statutes

28 U.S.C. § 1291 ......................................................................................4

28 U.S.C. § 1331 ...................................................................................3, 4

28 U.S.C. § 1343 ......................................................................................3

28 U.S.C. § 1343(a) ................................................................4

28 U.S.C. § 1367 ....................................................................3

28 U.S.C. § 144 ...............................................................54, 55

28 U.S.C. § 455 ...............................................................55, 57

28 U.S.C. § 455(a) ..........................................................54, 55

28 U.S.C. § 455(b)(1) ...........................................................55

28 U.S.C. § 631 ...............................................................56, 57

42 U.S.C. § 1981 ........................................................... passim

42 U.S.C. § 1981(a) .............................................................16

42 U.S.C. § 1983 ..................................................................22

42 U.S.C. § 1988 ....................................................................4

42 U.S.C. § 2000a ......................................................... passim

47 U.S.C. § 230 ............................................................. passim

47 U.S.C. § 230(a) ...............................................................29

47 U.S.C. § 230(b)(4) ...........................................................29

47 U.S.C. § 230(c)(1) .................................................... passim

47 U.S.C. § 230(c)(2) ...........................................................45

47 U.S.C. § 230(c)(2)(A) .................................................44, 45

47 U.S.C. § 230(e)(1) .....................................................27, 45

47 U.S.C. § 230(e)(3) .....................................................36, 44

47 U.S.C. § 230(f)(2) ............................................................38

47 U.S.C. § 230(f)(3) ............................................................39

**Other Authorities**

New Hampshire's Law Against Discrimination, New Hampshire
    Revised Statute Annotated 354-A:17...........................................passim

New Hampshire's Law Against Discrimination, New Hampshire
    Revised Statute Annotated Chapter 354-A ......................................20

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................4, 8

Federal Rule of Civil Procedure 59.....................................................3

Federal Rule of Civil Procedure 59(b)..................................................60

Federal Rule of Civil Procedure 59(e)............................................passim

Federal Rule of Civil Procedure 60.................................................3, 52

Federal Rule of Civil Procedure 60(b)............................................passim

**Constitutional Provisions**

U.S. Const., Art. I., § 8, cl. 3................................................................47

## PRELIMINARY STATEMENT

Plaintiff-appellant Daniel E. Hall ("Hall") alleges X Corp. (successor in interest to named defendant-appellee Twitter, Inc.) suspended his Twitter[1] account after he posted Tweets violating X Corp.'s Terms of Service ("TOS"), including X Corp.'s rules against hateful conduct, abuse, and harassment. The TOS, to which Hall alleges he agreed, permit X Corp. to suspend accounts for any reason, including for such violations.

Nonetheless, Hall seeks to hold X Corp. liable for suspending his account, asserting claims for racial discrimination and for violations of his free speech, free expression, free assembly, equal protection, and due process rights. His core allegation is that X Corp. suspended his account because he is white, pointing to X Corp. policies purportedly censoring Republicans, conservatives, and "white nationalists."

As the district court correctly held, Hall fails to state any claim upon which relief may be granted because: (1) he fails to plausibly allege X Corp. suspended his account because of his race, as required to state

---

[1] While the platform "Twitter" has been renamed as "X," for consistency with the briefing in this matter to date, X Corp. will continue to refer to the platform as "Twitter" in this brief.

a claim for discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"), Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a ("Title II") and New Hampshire's Law Against Discrimination, New Hampshire Revised Statute Annotated ("RSA") 354-A:17; (2) X Corp. is not a "place of public accommodation," as required to state a claim under Title II and RSA 354-A:17; and (3) X Corp. is a private company, not a state actor, and was not acting as a state actor in suspending Hall's Twitter account, as required to state a claim against X Corp. for the alleged constitutional violations.

The district court properly dismissed the case on these grounds, and judgment in X Corp.'s favor should be affirmed. The judgment also may be affirmed on two grounds the district court declined to reach, both of which are dispositive of Hall's claims: (1) Section 230 of the Communications Decency Act of 1996, 47 U.S.C. § 230 ("Section 230") provides X Corp. immunity from Hall's claims, and (2) the First Amendment of the U.S. Constitution bars Hall's claims, which he does not contest.

The district court also did not abuse its discretion by denying Hall's various pre- and post-judgment motions. The district court

correctly rejected Hall's arguments stemming from his incorrect contention that X Corp.'s motion to dismiss should have been stricken because X Corp.'s California-barred attorney was listed in the signature block, despite that X Corp.'s New Hampshire-barred attorney who is admitted to the district court signed the brief; and Hall's other fanciful and baseless accusations of judicial misconduct and bias.

The district court's judgment should be affirmed.

## JURISDICTIONAL STATEMENT

Hall sued X Corp. in the United States District Court for the District of New Hampshire. As the district court noted, Hall "alleges claims that [X Corp.'s] decision to suspend his account violated 42 U.S.C. § 1981 (Count I); Title II of the Civil Rights Act, 42 U.S.C. § 2000a, and RSA 354-A:17 (Count II); and his state and federal constitutional rights (Count III)." Doc. 139 at 5. The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367.

On May 10, 2023, the district court entered final judgment dismissing Hall's complaint. Doc. 140. On June 7, 2023, Hall filed timely motions under Federal Rules of Civil Procedure 59 and 60. Doc.

141–143. On June 9, 2023, the district court denied those motions in an Endorsed Order. Hall timely filed a notice of appeal on July 6, 2023.

X Corp. agrees with Hall that this Court has jurisdiction over this appeal under 28 U.S.C. § 1291. X Corp. does not agree that this Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a), or 42 U.S.C. § 1988. *See* Plaintiff-Appellant's Opening Brief ("AOB") at 3 ¶ 6.

## ISSUES PRESENTED

1.      Whether Hall's Complaint was correctly dismissed under Federal Rule of Civil Procedure 12(b)(6).

2.      Whether the district court abused its discretion by (a) denying Hall's Motion to Strike X Corp.'s Motion to Dismiss, Motion for Default, and Motion for Default Judgment against X Corp. and granting X Corp.'s Motion to Renew its Motion to Dismiss (Doc. 124); (b) denying Hall's Motion to Recuse Honorable Judge Elliot (Endorsed Order dated Nov. 23, 2022); and (c) denying Hall's post-judgment Motion for Reconsideration under Federal Rule of Civil Procedure 59(e) and two Motions to Void Judgments under Federal Rule of Civil Procedure 60(b) (Endorsed Order dated June 9, 2023).

## STATEMENT OF THE CASE

## I.   X CORP.'S USER AGREEMENT, TERMS OF SERVICE, AND RULES

Hall alleges that in March 2019 he signed up for Twitter[2] using the handle @BastaLies, and agreed to X Corp.'s (then Twitter Inc.'s) User Agreement ("UA"), which includes its TOS.[3] Doc. 1 ¶ 12, Ex. D. The TOS provide: "We may suspend or terminate your account . . . **at any time for any or no reason**, including, but not limited to, if we reasonably believe: (i) you have violated these Terms or [X Corp.'s] Rules and Policies." *Id.*, Ex. D-1, at § 4 (emphasis added). Under the TOS, X Corp. also may "suspend or terminate users . . . without liability." *Id.* The TOS

---

[2] Twitter, since renamed "X," is a free online platform that allows people all over the world to communicate through short messages called "Tweets."

[3] Hall relied upon and attached as Exhibit D-1 to his Complaint, the User Agreement current at the time of the filing of his Complaint, which went into effect on January 1, 2020. There are no relevant differences between the January 1, 2020 version and the May 25, 2018 version that was in place when Hall registered for Twitter in March 2019. (The May 25, 2018 version, which is incorporated by reference through Hall's continual references to the UA throughout his Complaint, is attached as Exhibit A to the Declaration of Jonathan Eck. Doc. 3-2; *see also* X's Terms of Service, http://twitter.com/en/tos/previous/version_13 (effective May 25, 2018); *Trans-Spec Truck Serv. v. Caterpillar*, 524 F.3d 315, 321 (1st Cir. 2008) (a court may consider material incorporated by reference in a complaint)).

incorporates X Corp.'s Rules, including its Violent Threats Policy, Hateful Conduct Policy, and Abusive Behavior Policy. *See generally id.*, Exs. D-2, D-3, D-4.

## II. HALL'S TWITTER CONTENT LED TO HIS SUSPENSION

Hall alleges X Corp. temporarily "locked" his account on November 7, 2019 for violation of X Corp.'s Rules against hateful conduct in its Hateful Conduct Policy, because he Tweeted: "If I had special powers I would reach through that video and Bitch slap that commie Bitch who is yelling like a 3-year old!!!" *Id.* ¶ 18(a); Ex. F-1. Then, on December 2, 2019, when the Washington Post Tweeted an article with a Tweet stating "Lisa Page is a uniquely convenient target for Trump's standard practice of belittling women," Hall reply-Tweeted "Ya, let's all get all cutesy with a fkcn #Traitor who should be hung if found guilty." *Id.* ¶ 18(b), Exs. F-2, F-3. In response, X Corp. permanently suspended Hall's account for violation of X Corp.'s Rules against abuse and harassment in its Hateful Conduct Policy. *Id.* ¶ 18(b).

Hall alleges he appealed his suspension. *Id.* ¶ 19. He further alleges X Corp. declined to restore his account because he had violated

the TOS, including specifically X Corp.'s rules against targeted abuse in the Abusive Behavior Policy. *Id.* ¶ 20(b); Ex. H.

### III. **HALL FILED HIS COMPLAINT**

On May 4, 2020, Hall filed his Complaint, asserting claims for (1) racial discrimination in violation of Section 1981, (2) racial discrimination in a place of public accommodation in violation of Title II and RSA 354-A:17; and (3) "constitutional violations" of his free speech, free expression, and free assembly rights under the First Amendment of the United States Constitution and Part I, Articles 22 and 32 of the New Hampshire Constitution, and his due process and equal protection rights under both constitutions. Doc. 1 ¶¶ 165-171.

Hall alleges X Corp. discriminated against him by suspending his account because he is white. *Id.* ¶ 1 ("Twitter . . . suspended . . . [Hall's] account services . . . because [he] is white and tweeted, posted, communicated, acted, displayed, behaved, and portrayed himself to be a white person.")). But Hall, whose Twitter handle was @BastaLies (not his name), and who attempted to maintain anonymity and proceed under a pseudonym in this case ("Sensa") (*id.*), does not allege that any

X Corp. employee knew who he was, let alone that he is white, when X Corp. suspended his account.

Hall nevertheless alleges "an unavoidable inference that [his] race impacted the discipline determination" exists because X Corp. allegedly has a policy of "going after and removing white supremacists, white separatists and white nationalists knowing that it would effect [sic] or regulate white Republicans, Conservatives, and whites [sic] voices." *Id.* ¶¶ 47, 91. He further alleges "Republic [sic] and Republican-leaning voters continue to be overwhelmingly white" (*id.* ¶ 23), and "it can be reasonably inferred that [X Corp.] suspends Republicans and Conservatives not for their political view or associations, but because they are white" (*id.* ¶ 96).

On June 1, 2020, X Corp. filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Doc. 3 ("Motion to Dismiss"). As discussed below (*see* Statement of the Case § V, *infra*), a series of motions, objections, and an interlocutory appeal followed. Ultimately, the court permitted X Corp. to renew its Motion to Dismiss on November 30, 2022. Doc. 124.

## IV. <u>THE DISTRICT COURT DISMISSED THE COMPLAINT</u>

On May 9, 2023, the district court granted X Corp.'s Motion to Dismiss on the grounds that Hall failed to state a claim upon which relief could be granted. Doc. 139 ("Dismissal Order"). Specifically, the court held Hall fails to state claims for violation of Section 1981, Title II, and RSA 354-A:17 because Hall fails to plausibly allege X Corp. suspended his account because he is white. *Id.* at 9–10. The court held Hall's Title II and RSA 354-A:17 claims fail for the additional reason that those statutes prohibit discrimination because of race in places of "public accommodation," but X Corp., which provides "only online services," is not a place of public accommodation. *Id.* at 10–11. Finally, the Court held Hall's constitutional claims fail because the constitutional protections "apply only against governmental action," X Corp. is not a state actor, and Hall failed to show the state action doctrine applied. *Id.* at 12–13.

## V.   <u>THE COURT'S ORDERS ON OTHER MOTIONS THAT HALL APPEALS</u>

When X Corp. first filed its Motion to Dismiss in June 2020, a flurry of motions and objections by Hall followed, then an interlocutory appeal.  After Hall filed his interlocutory appeal, the district court

denied X Corp.'s Motion to Dismiss without prejudice to renewing after the appeal. Endorsed Order dated March 8, 2021. On October 14, 2022, X Corp. filed a motion to renew its Motion to Dismiss. Doc. 99.

On October 27, 2022, Hall filed a Motion to Strike the Motion to Dismiss on the grounds that one of X Corp.'s California-barred attorneys, who had not yet been admitted *pro hac vice* at the time the Motion to Dismiss was filed, was included in the signature block, even though X Corp.'s New Hampshire-barred attorney—who *was* admitted to practice in the district court—signed the brief and was also included in the signature block. Doc. 100. Hall also filed motions for default and for default judgment on the same grounds. Docs. 101–102. On November 30, 2022, the district court denied all three of Hall's motions, holding there was "no legally cognizable basis" for the relief sought, given that X Corp.'s New Hampshire-barred attorney had signed the motion, and it granted X Corp.'s motion to renew its Motion to Dismiss. Doc. 124 ("November 20, 2022 Order"), at 5–7. Hall appeals the November 30, 2022 Order. AOB at 1 ¶ 1.

On October 11, 2022, the case was reassigned to the Honorable Judge Samantha D. Elliott. On October 30, 2022, Hall moved for Judge

Elliott to recuse herself, based on his speculation that Judge Elliott:
(1) voted to reappoint Magistrate Judge Andrea K. Johnston to another
term or participated in her reappointment proceedings, and (2) in so
doing, reviewed Hall's submission to the Merit Selection Panel to be
considered in the reappointment proceedings, in which he apparently
complained about Magistrate Judge Johnston's purportedly "illegal" *pro
hac vice* policies stemming from his objections regarding the Motion to
Dismiss signature block. Doc. 104. The district court denied Hall's
motion on November 23, 2022. Endorsed Order dated November 23,
2022 ("Recusal Order"). Hall appeals that order. AOB at 1 ¶ 1.

As noted, on May 9, 2023, the district court granted X Corp.'s
Motion to Dismiss. Doc. 139. The district court entered judgment the
next day. Doc. 140. On June 7, 2023, Hall filed three post-judgment
motions: (1) under Federal Rule of Civil Procedure 59(e) (which
authorizes motions to amend or alter a judgment), a "motion for
reconsideration" of the Recusal Order, the November 30, 2022 Order,
and the Dismissal Order (Doc. 141); (2) under Federal Rule of Civil
Procedure 60(b), a motion to "void" the Recusal Order, the November 30,
2022 Order, and the Dismissal Order (Doc. 142); and (3) also under Rule

60(b), a motion to "void all the Court's Orders and Judgment" (Doc. 143). The district court summarily denied all three motions in a June 9, 2023 order. Endorsed order dated June 9, 2023 ("Post-Judgment Order"). Hall appeals that order. AOB at 1 ¶ 1.

## SUMMARY OF THE ARGUMENT

1.     The district court's judgment dismissing Hall's complaint for failure to state a claim should be affirmed. Hall does not state a plausible claim for racial discrimination in violation of Section 1981, Title II, or RSA 354-A:17. Hall contends he espoused conservative and Republican viewpoints, from which X Corp. should have inferred he was white. But the district court correctly held these allegations reflected, at most, his political viewpoints, not his race, and therefore cannot plausibly state a racial discrimination claim. And, in any case, he fails to plausibly allege his race was the reason for his suspension sufficient to state a claim for violation of Section 1981, Title II, or RSA 354-A:17.

Hall's Title II and RSA 354-A:17 claims also fail, because, as the district court correctly held, those statutes prohibit racial discrimination in the context of public accommodations—and X Corp., which provides an online social networking platform, is not a public accommodation.

The district court correctly dismissed Hall's constitutional claims because Hall's free speech, free expression, free assembly, due process, and equal protection rights are protected only against state action—not against X Corp., a private company. The state action doctrine does not apply here because: (1) X Corp. did not act pursuant to any state-created right, privilege, or rule when it suspended Hall's account, and (2) Hall has not established that, by suspending his account, X Corp. assumed an exclusive public function, was compelled by the state, or acted jointly with it.

The judgment also may be affirmed on alternate grounds the district court did not reach: (1) Section 230 provides immunity from Hall's claims, and (2) X Corp.'s content moderation decisions are protected by the First Amendment, which Hall does not contest.

2.    The district court did not abuse its discretion by denying Hall's various pre- and post-judgment motions.

The district court did not abuse its discretion by denying Hall's Motion to Strike, Motion for Default, and Motion for Default Judgment and by granting X Corp.'s Motion to Renew its Motion to Dismiss in its November 30, 2022 Order. Those motions were predicated on Hall's

incorrect contention that because X Corp.'s California-barred attorney was listed in the signature block on X Corp.'s Motion to Dismiss before she was admitted *pro hac vice*, X Corp.'s motion was invalid. But X Corp.'s New Hampshire-barred attorney—who was admitted to the district court—signed X Corp.'s motion and was included in the signature block. The district court correctly denied his motions on this basis.

The district court also did not abuse its discretion in denying Hall's Motion to Recuse Honorable Judge Elliot, where Hall failed to adequately show any judicial prejudice or bias requiring recusal under those circumstances.

Finally, the district court did not abuse its discretion in denying Hall's post-judgment Motion for Reconsideration and Motions to Void Judgments. Those motions, at bottom, sought to relitigate the district court's correctly decided orders, and did not meet the standards for relief under Federal Rules of Civil Procedure 59(e) or 60(b).

For these reasons, this Court should affirm the judgment of the district court.

## ARGUMENT

## I. THE DISTRICT COURT DID NOT ERR IN DISMISSING HALL'S COMPLAINT

### A. Standard of Review

This court "review[s] de novo an order of dismissal for failure to state a claim." *Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013).

"Dismissal is appropriate 'if the complaint does not set forth 'factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory.'" *Id.* (quoting *Lemelson v. U.S. Bank Nat'l Ass'n*, 721 F.3d 18, 21 (1st Cir.2013)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Lemelson*, 721 F.3d at 21 and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

15

"It is well established that [this Court] may affirm the dismissal of a complaint on any basis available in the record." *Sakab Saudi Holding Co. v. Aljabri*, 58 F.4th 585, 594 (1st Cir. 2023) (internal quotation marks and citations omitted). "[A]s always," it may do so "even if it would require ruling on arguments not reached by the district court." *Id.*

**B.** **The District Court Correctly Held that Hall Fails to State Any Plausible Claim Upon Which Relief May Be Granted**

*1.* *Hall Fails to State a Plausible Section 1981 Claim*

To state a claim for racial discrimination in violation of Section 1981, a plaintiff must allege: (1) "he is a member of a racial minority," (2) "defendant discriminated against him on the basis of his race, and" (3) "the discrimination implicated [an] . . . activit[y] enumerated in the statute." *Garrett v. Tandy Corp.*, 295 F.3d 94, 98 (1st Cir. 2002) (citations omitted). Section 1981 protects, *inter alia*, the right to "the full and equal benefit of all laws . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). "[A] plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast*

*Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020).

The district court correctly held Hall that fails to plausibly allege X Corp. "discriminated against him on the basis of his race." Doc. 139 at 8. As the court noted, Hall alleged X Corp. "was aware that he was white because he espoused Republican and conservative viewpoints in his Tweets" and that "because Republicans and conservative voters are largely white, the court can infer that [X Corp.] was aware that [he] was white." *Id.* But as the court correctly held, these allegations are insufficient to allege X Corp. knew he was white. *Id.* This, alone, was grounds for dismissal, as there was "no factual basis for [Hall's] conclusory assertion that [X Corp.] understood that" Hall was white. *Drake v. Mitch Rosen Extraordinary Gunleather, LLC*, No. 16-CV-527-JL, 2017 WL 1076396, at \*3 n.2 (D.N.H. Jan. 17, 2017) (dismissing Section 1981 claims where plaintiff alleged communications with defendant "by mail, by e-mail, and over the telephone," such that there was "no factual basis for his conclusory assertion that [defendant] understood that [plaintiff's] race was African American").

The district court also correctly concluded Hall failed to "allege[] any facts to show that [X Corp.] suspended his account <u>because</u> he is white." Doc. 139 at 8. As the court found, "[a]t best, Hall alleges that [X Corp.] discriminated against him because of his political beliefs, and that those beliefs are overwhelmingly held by white individuals." *Id.* And as the district court acknowledged, non-white people can and do espouse Republican or conservative views as well. Doc. 139 at 8. (Indeed, several of the Republican presidential primary candidates—former Governor Nikki Haley, Senator Tim Scott, and Vivek Ramaswamy—are not white.[4]) To the extent Hall alleges he was discriminated against because of his political views, Section 1981 "does not prohibit discrimination on the basis of political affiliation," as the district court correctly held. *Id.* (quoting *Keating v. Carey*, 706 F. 2d 377, 384 (2d Cir. 1983); citing *Dartmouth Rev. v. Dartmouth Coll.*, 709 F. Supp. 32, 37 (D.N.H. 1989), *aff'd*, 889 F.3d 13 (1st Cir. 1989)).[5]

---

[4] Non-white people also espouse racist and white-supremacist beliefs, underscoring the court's correct conclusion that Hall's allegations of X Corp.'s purported knowledge of Hall's race supposedly gleaned from political Tweets are implausible.

[5] As an additional basis for affirmance, Hall, an alleged white man, has not alleged he is a member of a racial minority, as required to state a claim under Section 1981. *See Kashelkar v. Bluestone*, 306 F. App'x 690,

Hall argues X Corp. identifies "users on race based [sic] information for its advertisers" and he "acted, represented, displayed, behaved and portrayed himself to be a white person." AOB at 5. Whatever Hall may mean by his allegations that he "acted" or "behaved" like "a white person," Hall failed to allege any facts showing X Corp. "identified" Hall's race for any purpose. Even if these allegations were credited, they fail to "allege some facts that demonstrate that [his] race was the <u>reason</u> for [X Corp.'s] actions"—as the district court correctly held. Doc. 139 at 9 (quoting *Dartmouth Rev.*, 709 F. Supp. At 36 (cleaned up)).

The dismissal of Hall's Section 1981 claim should be affirmed.

2.  *Hall Fails to State Plausible Title II and RSA 354-A:17 Claims*

The district court correctly dismissed Hall's second count, racial discrimination in violation of both Title II and RSA 354-A:17, for failure to allege their shared requirements: allegations of discrimination

---

692 (2d Cir. 2009) (plaintiff's "42 U.S.C. § 1981 claims fail as well, as he alleged neither that he was a member of a racial minority nor that the Defendants-Appellees had discriminated against him on that basis.").

because of race in a place of public accommodation.[6] Doc. 139 at 9-10.
These claims suffer the "same failure" as Hall's Section 1981 claim: "he
fails to allege that [X Corp.] suspended his account because he is white."
*Id.* at 10.

The court also correctly held these claims fail for an additional
reason: both statutes "prohibit racial discrimination in places of 'public
accommodation,'" but "[c]ompanies, including [X Corp.], that provide
only online services . . . are not places of public accommodation." *Id.* at
10. Indeed, this Court recently affirmed dismissal of a claim for violation
of Title II against X Corp. on this basis: "social media platforms are not
places of 'public accommodation.'"[7] *See Martillo v. Twitter Inc.*, No. CV
21-11119-RGS, 2021 WL 8999587, at *1 (D. Mass. Oct. 15, 2021), *aff'd*,
No. 21-1921, 2022 WL 18862030 (1st Cir. Oct. 4, 2022), *cert. denied*, 143

---

[6] Hall also has not alleged satisfaction of the administrative
prerequisites to bring a RSA 354–A:17 claim. *See* N.H. RSA Chapter
354-A; *Wilson v. Port City Air, Inc.*, No. 13-cv-129-JD, 2013 WL 2631860,
at *2 (D.N.H. June 12, 2013).

[7] As the district court correctly held, this reasoning applies with equal
force to discrimination in places of "public accommodation" under RSA
354-A:17. Doc. 139 at 11 (citing *Burnap v. Somersworth Sch. Dist.*, 172
N.H. 632, 636–37 (2019) ("In interpreting RSA chapter 354-A, we are
aided by the experience of the federal courts in construing the similar
provisions of Title VII of the 1964 Civil Rights Act.") (citation omitted)).

S. Ct. 779, 215 L. Ed. 2d 48 (2023) ("The statutory definition of a 'public accommodation' cannot be interpreted to include a virtual meeting place"); *Lewis v. Google LLC*, 851 F. App'x 723, 724 (9th Cir. 2021) ("To conclude Google or YouTube were places of public accommodation under Title II would obfuscate the term 'place' and render nugatory the examples Congress provides to illuminate the meaning of that term.").

Hall argues X Corp. is a place of public accommodation, pointing to his allegations that X Corp.'s "San Francisco facility"—*i.e.*, its offices—have a cafeteria and otherwise make "food and beverages" available to employees, and operate various facilities including purported "soda fountains" and "motion picture houses" (language Hall seems to have plucked from Title II, rather than reality). AOB at 15–16; Doc. 1 ¶¶ 98-100. But Hall does not allege he attempted or was denied access to X Corp.'s offices, or any of its purported facilities, or even that they were accessible to the public—he alleges only that his Twitter account was suspended. *See* Doc. 1 ¶ 14 ("Twitter banned [Hall] from using many of the services offered at Twitter.com."); *see also id.* ¶¶ 15-20. These allegations do not plausibly allege he either attempted to access, or was denied access, to a public accommodation.

21

The district court's dismissal of Count II should be affirmed.

### 3.    Hall Fails to Plausibly Allege the Violation of Any Constitutional Right

Hall alleges X Corp. violated his rights to freedom of speech, freedom of assembly, and freedom of expression under the First Amendment of the U.S. Constitution and Part I, Articles 22 and 32 of the New Hampshire Constitution, as well as his rights to due process and equal protection under both constitutions. Doc. 1 ¶¶ 165-68.

As the district court explained, First Amendment protections, as well as Fourteenth Amendment protections for due process and equal protection, "apply only against governmental action, that is, restrictions or discrimination imposed by state actions." Doc. 139 at 12 (citing 42 U.S.C. § 1983; *Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013); *Jarvis v. Vill. Gun Shop, Inc.*, 805 F.3d 1, 6 (1st Cir. 2015)). Likewise, state action "is also a required element of a claim under the New Hampshire Constitution." Doc. 139 at 12) (citing *HippoPress, LLC v. SMG*, 150 N.H. 304, 308 (2003)).

As the district court correctly held, X Corp. "is a private company, not a government or state actor, and Hall has not shown that the state action doctrine would apply in the circumstance of this case." Doc. 139

at 12 (citing *O'Handley v. Weber*, No. 22-15071, 2023 WL 2443073, at *4–5 (9th Cir. Mar. 10, 2023); *Berenson v. Twitter, Inc.*, No. C 21-09818 WHA, 2022 WL 1289049, at *3 (N.D. Cal. Apr. 29, 2022); *Freedom Watch, Inc. v. Google, Inc.*, 368 F. Supp. 3d 30, 40–41 (D.D.C. 2019), *aff'd*, 816 F. App'x 497 (D.C. Cir. 2020)); *see also Hummasti v. Republic of Pakistan*, No. 3:21-CV-01852-MO, 2022 WL 74218, at *1 (D. Or. Jan. 7, 2022), *aff'd*, No. 22-35091, 2022 WL 17761081 (9th Cir. Dec. 19, 2022) (X Corp. "is a private corporation and therefore unable to violate an individual's First Amendment right to free speech.").

"The state action requirement has two components:" (1) the plaintiff must plausibly allege a constitutional violation was caused by the "exercise of some right or privilege created by the State or by a rule of conduct imposed by the state"; and (2) the plaintiff must plausibly allege the defendant is "'a person who may fairly be said to be a state actor." *Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto*, 522 F.3d 1, 4 (1st Cir. 2008) (quoting *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922 (1982)).

Hall fails to plausibly allege either of these components.

a. <u>Hall Fails to Plausibly Allege His Account Was Suspended Based on Any State Privilege, Right, or Rule</u>

Here, as in the case of other Twitter users who have alleged their constitutional rights were violated by their account suspensions, Hall's "claims falter at the first step." *O'Handley v. Weber*, 62 F.4th 1145, 1156 (9th Cir. 2023). X Corp.'s suspension of Hall's account was not an exercise of a right or privilege created by the State or enforcement of a State rule; rather, as he alleges, X Corp. acted pursuant to its own rules and Terms of Service. Doc. 1 ¶ 18 ("Twitter locked [Hall's] Twitter account for allegedly violating Twitter rules."); *id.* ¶ 20(b) ("Your account has been suspended and will not be restored because it was found to be violating the Twitter Terms of Service, specifically the Twitter Rules against participating in targeted abuse.").

Under these circumstances, Hall fails to allege any state action. *See Weber*, 62 F.4th at 1156 (X Corp. "did not exercise a state-created right when it limited access to [plaintiff's] posts or suspended his account. [X Corp.'s] right to take those actions when enforcing its content-moderation policy was derived from its user agreement . . . . As the quoted message that [X Corp.] sent to [plaintiff] makes clear, the

24

company acted under the terms of its own rules, not under any provision of California law.") (dismissing First Amendment, equal protection, and due process claims); *Rutenburg v. Twitter, Inc.,* No. 4:21-CV-00548-YGR, 2021 WL 1338958, at *2 (N.D. Cal. Apr. 9, 2021), *aff'd,* No. 21-16074, 2022 WL 1568360 (9th Cir. May 18, 2022) ("[T]he amended complaint merely describes how [X Corp.] . . . restricted [a user's] Tweets and accounts. . . . None of this has any connection with the exercise of authority by a sovereign state. Thus, the amended complaint fails to allege any conduct with a nexus to a state privilege or power."); *see also Kennedy v. Google LLC*, No. 23-CV-03880-TLT, 2023 WL 5440787, at *4 (N.D. Cal. Aug. 23, 2023) ("YouTube removed Plaintiff's videos based on its content moderation and COVID-19 medical misinformation policy as permitted under the terms of service . . . Plaintiff does not produce evidence establishing . . . [it] was pursuant to a state-created right.").

In short, Hall fails to allege his account was suspended based on any state privilege, right, or rule, and therefore fails to plausibly allege the state action doctrine applies.

>    b.    Hall Fails to Plausibly Allege X Corp. Acted as a
>          State Actor When It Suspended His Account

This Court has "cautioned that '[i]t is "[o]nly in rare circumstances"
that private parties can be viewed as state actors'" as "[t]he bar for such
a showing is set quite high." *Jarvis, Inc.*, 805 F.3d at 8 (quoting *Lugar*,
457 U.S. at 937). As the U.S. Supreme Court recently explained: "Under
this Court's cases, a private entity can qualify as a state actor in a few
limited circumstances—including, for example, (i) when the private
entity performs a traditional, exclusive public function, . . . (ii) when the
government compels the private entity to take a particular action, . . . or
(iii) when the government acts jointly with the private entity."
*Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. ___, 139 S. Ct. 1921
(2019).

Hall fails to plausibly allege that any of these circumstances
existed when X Corp. suspended Hall's account.

>    i)    **Suspending an Account on a Private
>          Platform Is Not an Exclusive
>          Government Function**

Hall argues X Corp. is a state actor because, by enacting Section
230, Congress "conferred" government authority on X Corp. to "regulate
speech" on its platform, which he contends is a digital "public forum."

AOB at 34-35 ¶¶ 58-59. This argument fails because its underlying premise is wrong: by its plain language, Section 230 does not provide X Corp. the right to "regulate speech." Rather, Section 230 provides *immunity* from claims that would treat X Corp. as a "publisher" of user content—*i.e.*, claims that would impose liability for its content moderation decisions. *See* 47 U.S.C. §§ 230(c)(1) & 230(e)(1); *see also* Argument, Section C.1, *infra*. Nothing in Section 230's text *requires* content moderation nor "confers" any government function to X Corp. *Lewis v. Google LLC*, 461 F. Supp. 3d 938, 953 (N.D. Cal. 2020), *aff'd*, 851 F. App'x 723 (9th Cir. 2021) (rejecting argument that section 230(c)(1) violates the First Amendment and restricts plaintiff's speech because "this provision does not ban or restrict any speech"); *Trump v. Twitter Inc.*, 602 F. Supp. 3d 1213, 1225 (N.D. Cal. 2022), *motion for relief from judgment denied*, No. 3:21-CV-08378-JD, 2023 WL 1997921 (N.D. Cal. Feb. 14, 2023), *appeal filed*, *Trump v. Twitter, Inc.* (9th Cir. June 28, 2022) ("The government cannot plausibly be said to have compelled [X Corp.'s] action through Section 230, which in any event imposed no affirmative obligations on [X Corp.] to act in any particular way.") (dismissing First Amendment claims premised on account

suspension); *cf. Green v. America Online (AOL)*, 318 F.3d 465, 472 (3d Cir. 2003) ("Section 230(c)(2) does not *require* AOL to restrict speech; rather it allows AOL to establish standards of decency without risking liability for doing so.").[8]

X Corp.'s right to moderate content on its platform is based on its Terms of Service, to which Hall (and other users) agreed, as well as X Corp.'s fundamental First Amendment right (*see* Argument, Section C.2, *infra*)—all of which exist independently of Section 230. *See*, *e.g.*, *NetChoice, LLC v. Attorney Gen, Fla.*, 34 F.4th 1196, 1213 (11th Cir. 2022) ("When [social media] platforms choose to remove users . . . they engage in First Amendment-protected activity."); *Davison v. Facebook, Inc.*, 370 F. Supp. 3d 621, 629 (E.D. Va.), *aff'd,* 774 F. App'x 162 (4th Cir. 2019), *cert denied*, 140 S. Ct. 1111 ("Facebook has, as a private entity, the right to regulate the content of its platforms as it sees fit.").

In any event, Hall's argument that Section 230 converted X Corp. to a "state actor" by conferring the "power of regulating speech" could never succeed because private platform content moderation is not a

---

[8] While the Court in *Green* referred to subsection 230(c)(2) here, rather than subsection 230(c)(1) under which X Corp. seeks immunity, it is a distinction without a difference with respect to this holding.

government function "exclusively reserved to the State," as required to transform a private entity to a "state actor." *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 158 (1978); *Halleck*, 139 S. Ct. at 1930-31 ("[H]osting speech by others is not a traditional, exclusive public function and does not alone transform private entities into state actors subject to First Amendment constraints. If the rule were otherwise, all private property owners . . . who open their property for speech would be subject to First Amendment constraints and would lose the ability to exercise what they deem to be appropriate editorial discretion . . . Private property owners . . . would face the unappetizing choice of allowing all comers or closing the platform altogether. . . . The Constitution does not disable private property owners . . . from exercising editorial discretion over speech and speakers on their property.").[9]

---

[9] Congress's enactment of Section 230 is consistent with the articulation of First Amendment protections for private property owners hosting speech in *Halleck*. In enacting Section 230, Congress sought to prevent the specific "unappetizing choice" the *Halleck* court identifies—*i.e.*, that platforms might choose to shut themselves down for fear of facing liability for their content moderation decisions. 47 U.S.C. § 230(a). The express policy goal underlying Section 230 was the removal of "disincentives" that existed to the exercise of the right to moderate content (47 U.S.C. § 230(b)(4))—*i.e.*, legal liability. *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1163 (9th Cir. 2008) ("*Roommates*") (Before Section 230, platforms "that

For this reason, courts uniformly have rejected the argument that online social networking platforms are performing a "public function" by hosting and regulating speech on their platforms. *See, e.g.*, *Rutenburg v. Twitter, Inc.*, No. 21-16074, 2022 WL 1568360, at *2 (9th Cir. May 18, 2022) ("The relevant function here—moderating speech on the Twitter platform—is not 'an activity that only governmental entities have traditionally performed.'") (quoting *Halleck*, 139, S.Ct. at 1930); *Freedom Watch, Inc. v. Google Inc.*, 816 F. App'x 497, 499 (D.C. Cir. 2020) (where plaintiffs alleged X Corp. violated their First Amendment rights by excluding them from its platform, X Corp. was not a state actor because "under *Halleck*, 'a private entity who provides a forum for speech is not transformed by that fact alone into a state actor'") (citation omitted); *see also Prager Univ. v. Google LLC*, 951 F.3d 991, 998 (9th Cir.

---

voluntarily filter[ed] some messages" faced liability "whereas [platforms] that bur[ied] their heads in the sand and ignore[d] problematic posts altogether escape[d] liability . . . . In passing section 230, Congress sought to spare [platforms] this grim choice by allowing them to perform some [moderation] without thereby becoming liable for all [user content]," and "sought to immunize the *removal* of user-generated content") (emphasis in original). Section 230 therefore does not require platforms to self-moderate, but eliminates the disincentive of the specter of liability when platforms do choose to moderate—even where a user does not agree with the choices made by the platform.

2020) ("YouTube also does not conduct a quintessential public function through regulation of speech" on its platform).

Nor does the fact that Twitter has been likened to an online "public square" change the fact that it is a private company, not a state actor. *See*, *e.g.*, *Berenson v. Twitter, Inc.*, No. C 21-09818 WHA, 2022 WL 1289049, at *3 (N.D. Cal. Apr. 29, 2022) ("Twitter 'may be a paradigmatic public square on the Internet, but it is not transformed into a state actor solely by providing a forum for speech.'") (quoting *Prager Univ.*, 951 F.3d at 997 (cleaned up)).

In sum, Hall provides no authority or support for his contention that content moderation on a private platform is the exclusive function of the state.

### ii)    Congress Did Not "Compel" X Corp. to Suspend Hall

Under the compulsion theory, a private entity's conduct may constitute state action "when the government compels the private entity to take a particular action." *Halleck*, 139 S. Ct. at 1928. The government must have "exercised coercive power or ha[ve] provided such significant encouragement, either overt or covert, that the choice must in law be

deemed to be that of the [government]." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).

Here, Hall's conclusory allegations that Congress's enactment of Section 230, and congressional hearings regarding Section 230, coerced or compelled X Corp. to remove any content, let alone suspend Hall's account, are implausible. *See* AOB at 31-34 ¶¶ 50-55. As discussed above in Argument, Section I.B.3.b.i, *infra*, Section 230, by its plain language, does not "compel" X Corp. to remove any content from its platform, and certainly not Hall's content. Moreover, Hall does not attempt to identify any "coercive" language in Section 230. *See* AOB at 31-34 ¶¶ 50-55.

Nor do the various bits and pieces of Congressional inquiry about the mechanics of X Corp.'s own moderation policies and "what steps [X Corp.] is taking to improve the consistency of its enforcement" of its *own policies* plausibly allege Section 230 compelled X Corp. to make any content moderation decision, let alone to suspend Hall's account. *See* AOB at 31-33 ¶¶ 50-52; Doc. 1 ¶¶ 112–113, Ex. Q-2; *see*, *e.g.*, *Doe v. Google LLC,* No. 21-16934, 2022 WL 17077497, at *2 (9th Cir. Nov. 18, 2022) ("Speaker Pelosi's and Representative Schiff's comments—lack force of law, rendering them incapable of coercing YouTube to do much

of anything") (affirming dismissal of First Amendment claims alleging YouTube and Google were "compelled by the federal government" to take down plaintiffs' content). Likewise, alleged statements and proposed legislation by individual members of Congress regarding how Section 230 might be changed in the future—not even mentioning X Corp. or Twitter—are insufficient to allege any content moderation decision was compelled or coerced by the government. AOB at 33–34 ¶¶ 53-55; Doc. 1-4, Ex. Q; *see Doe,* 2022 WL 17077497, at *2 ("[Plaintiff]s focus on House Resolution 1154, but in addition to having no force of law, the resolution mentions Google only in passing, and neither mentions nor asks anything of YouTube.").

In short, Hall fails to allege *any* specific request, or coercive act, by the government to suspend his account. Under these circumstances, he has failed to allege X Corp. was transformed to a state actor by being "compelled" or "coerced" by Congress. *See Doe*, 2022 WL 17077497, at *2; *see also Davison*, 370 F. Supp. 3d at 628–29 ("There is no suggestion that the [government entity] 'coerced' or even discussed deleting Plaintiff's comments on Facebook. . . . Similarly, there is no indication that the [government entity] or any other state actor coerced or even conferred

with Facebook regarding its terms of service, which, as Plaintiff admits in the Amended Complaint, apply universally . . . Under these circumstances, Facebook cannot be deemed a state actor.").

### iii) X Corp. and Congress Did Not Take "Joint Action" to Suspend Hall's Twitter Account

Plaintiff's argument that X Corp. entered into a "joint enterprise" with Congress to "regulate and ban speech" fails. *See* AOB at 36 ¶ 61. "To establish state action through this route, a plaintiff must show that the state has so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the challenged activity." *Jarvis*, 805 F.3d at 8–9. "This test is intentionally demanding and requires a high degree of cooperation between private parties and state officials." *Weber*, 62 F.4th at 1159–60.

Here, Plaintiff fails to allege that the government was a joint participant in any aspect of his account suspension—he alleges only that X Corp. suspended his account for violation of its rules. Doc 1 ¶¶ 18, 20. Hall's allegations that Congress conferred the right to "regulate speech" on X Corp. by enacting Section 230 have been refuted above. *See* Argument, Section I.B.3.b.i, *supra*. And Plaintiff fails to plausibly allege

any cooperation at all between the government and X Corp. in connection with the suspension of his account, let alone anything rising to the level of a "joint action" sufficient to establish a state action. *See Weber*, 62 F.4th at 1154, 1160 (where state election agency had flagged hundreds of "erroneous or misleading social media posts" and "98 percent of those posts were promptly removed," the Ninth Circuit affirmed that [X Corp.] exercised its own independent judgment in content moderation, and therefore conduct did "not rise to the level of joint action.").

In sum, the district court correctly dismissed Hall's constitutional claims, and that decision should be affirmed.

## C. This Court May Affirm Dismissal on Other Bases the District Court Declined to Reach

This Court may affirm dismissal on two grounds the district court declined to reach: (1) Section 230 provides X Corp. immunity from Hall's claims; and (2) the First Amendment bars Hall's claims, which he does not contest.

### 1. Section 230 Provides X Corp. Immunity from Hall's Claims

Section 230 affords X Corp. immunity from Hall's claims, which seek to impose liability based on X Corp.'s publishing functions, including its decisions regarding the content permitted on its platform, and who may post content on its platform. 47 U.S.C. §§ 230(c)(1) & 230(e)(3); *see Monsarrat v. Newman*, 28 F.4th 314, 320 (1st Cir. 2022) (Section 230 immunity applies to claims based upon decisions "determining whether to 'publish' certain information" on a platform); *see also Martillo*, 2021 WL 8999587, at *2 (X Corp.'s "alleged blocking of content posted by [pro se plaintiff] and disabling of his account are editorial decisions protected by [Section 230]") (dismissing Title II claim).

Section 230(c)(1) provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Section 230(e)(3) provides, aside from exceptions not relevant here, "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." 47 U.S.C. § 230(e)(3).

36

Section 230 "'precludes courts from entertaining claims that would place a [platform] in a publisher's role,' and therefore bars 'lawsuits seeking to hold a [platform] liable for . . . a publisher's traditional editorial functions – such as deciding whether to publish, withdraw, postpone, or alter content.'"[10] *Martillo*, 2021 WL 8999587, at *2 (citing *Green*, 318 F.3d at 471 (quoting *Zeran v. America Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997))). "Accordingly, a defendant is shielded from liability . . . if: (1) [the defendant] is a 'provider or user of an interactive computer service'; (2) the claim is based on 'information provided by another information content provider'; and (3) the claim would treat [the defendant] 'as the publisher or speaker' of that information." *Monsarrat*, 28 F.4th at 318 (quoting *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 418 (1st Cir. 2007) (quoting 47 U.S.C. § 230(c)(1))).

---

[10] As noted, *supra*, *Martillo* was decided under section 230(c)(2), which also provides immunity for certain publishing decisions, but X Corp. does not invoke that provision here. X Corp. invokes immunity under section 230(c)(1) and 230(e)(3). For the purposes for which X Corp. relies on *Martillo*, this is a distinction without a difference, including because— as in the case of the language from *Green* and *Zeran* quoted by *Martillo* here—the court itself relies on authorities referring to section 230(c)(1).

"[I]mmunity under section 230 'should be broadly construed.'"
*Monsarrat*, 28 F.4th at 318 (quoting *Lycos*, 478 F.3d at 419). "[S]ection 230 must be interpreted to protect websites not merely from ultimate liability, but [also] from having to fight costly and protracted legal battles." *Roommates*, 521 F.3d at 1175.

Here, all three prongs of the Section 230 analysis are met, providing X Corp. immunity from Hall's suit, and this court may affirm dismissal on this basis.

a. X Corp. Is an "Interactive Computer Service" Provider

Section 230 defines "interactive computer service" broadly to include "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." 47 U.S.C. § 230(f)(2). As courts unanimously have held, X Corp. "qualifies as an interactive computer service" provider. *Brittain v. Twitter, Inc.*, No. 19-CV-00114-YGR, 2019 WL 2423375, at *2 (N.D. Cal. June 10, 2019), *dismissing appeal as frivolous*, *Brittain v. Twitter*, Inc., No. 19-16622, 2020 WL 4877527, at *1 (9th Cir. Mar. 6, 2020); *Morton v. Twitter, Inc.*, No. CV 20-10434-GW-JEMX, 2021 WL 1181753, at *3 (C.D. Cal. Feb. 19, 2021) (X Corp. "provides the

prototypical service entitling it to protections of [Section 230]" and "[e]very decision the Court has seen to consider the issue has treated [X Corp.] as an interactive computer service provider, even at the motion to dismiss stage.") (citations omitted); *accord Al-Ahmed v. Twitter, Inc.*, 603 F. Supp. 3d 857, 880-81 (N.D. Cal. 2022), *appeal dismissed*, No. 22-15914, 2022 WL 4352712 (9th Cir. July 7, 2022).

Here, Hall's allegations require the same conclusion. *See*, *e.g.*, Doc. 1 ¶ 10 (referring to Twitter as a "computer network via a website accessed by a computer"). Section 230's first prong is satisfied.

> **b.** Hall's Account and Content Are "Information Provided by Another Information Content Provider"

Section 230 defines an "information content provider" as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." 47 U.S.C. § 230(f)(3); *Monsarrat*, 28 F.4th at 319 ("this definition is 'broad'" and means "those who are responsible for the development of content") (quoting *Lycos*, 478 F.3d at 419). Under Section 230, "specific posts made . . . by [the plaintiff]" constitute "information provided by another content provider." *See*

*King v. Facebook*, Inc., No. 19-CV-01987-WHO, 2019 WL 4221768, at

*4 (N.D. Cal. Sept. 5, 2019), *aff'd*, 845 F. App'x 691 (9th Cir. 2021)

(Section 230 provided immunity from pro se plaintiff's racial

discrimination claims based on Facebook's removal of his own posts

and suspension of his account); *see also Al-Ahmed*, 2022 WL 1605673,

at *16 (where plaintiff's "claims against [X Corp.] are related to the

suspension of his account," "[t]he second … prong[] [is] also satisfied").

Here, Hall's claims arise from X Corp.'s suspension of his Twitter

account based upon Tweets he admits he authored. *See* Doc 1 ¶ 18(b)

(alleging X Corp. permanently suspended Hall's account on December 2,

2019, when the Washington Post Tweeted an article with a Tweet

stating "Lisa Page is a uniquely convenient target for Trump's standard

practice of belittling women," Hall reply-Tweeted "Ya, let's all get all

cutesy with a fkcn #Traitor who should be hung if found guilty." *Id.* Exs.

F-2, F-3); *see also id.* ¶ 18(a) (alleging X Corp. temporarily "locked" Hall's

account on November 7, 2019 for violation of X Corp.'s Rules against

hateful conduct in its Hateful Conduct Policy because he Tweeted: "If I

had special powers I would reach through that video and Bitch slap that

commie Bitch who is yelling like a 3-year old!!!" *Id.* ¶ 18(a); Ex. F-1).

Because Hall's account and Tweets, on which his claims are based, are "information provided by another content provider," Section 230's second prong is also satisfied.

<u>c.</u>    <u>Hall's Claims Seek to Impose Liability on X Corp. as a "Publisher"</u>

Section 230's third prong is satisfied because Hall's claims seek to hold X Corp. liable as "publisher" within the meaning of Section 230. *See* 47 U.S.C. § 230(c)(1). Courts have long held that the removal of content or an account from a social networking platform is publishing activity. *Martillo*, 2021 WL 8999587, at *2 ("blocking of content posted by [plaintiff]" and "disabling of his [Twitter] account" are "editorial decisions protected by [Section 230]"); *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009), *as amended*, (Sept. 28, 2009) ("The removal of the . . . profiles" is "removing content," which is "*publishing conduct* that we have insisted that section 230 protects from liability") (emphasis in original); *see also Force v. Facebook, Inc.*, 304 F. Supp. 3d 315, 329 (E.D.N.Y. 2018), *aff'd in part, dismissed in part*, 934 F.3d 53 (2d Cir. 2019), *cert denied*, 140 S. Ct. 2761 (2020) ("[C]hoices as to who may use [a provider's] platform are inherently bound up in its decisions as to what may be said on its platform, and so liability [therefrom] . . .

41

would equally 'derive[ ] from [the provider's] status or conduct as a 'publisher or speaker.'"). For purposes of Section 230 immunity, what matters "is not the name of the cause of action, [but] whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided." *Barnes*, 570 F.3d at 1101–02.

Here, Hall's laundry list of claims all seek to impose liability for X Corp.'s suspension of his account, which is protected publishing activity. Doc. 1 ¶¶ 18–20, 137–175. That is the case even where, as here, Hall alleges (in conclusory fashion, and without factual support) that X Corp.'s content moderation decisions were discriminatory. *See, e.g.*, *Martillo*, 2021 WL 8999587, at *1 (Section 230 barred Title II claim alleging X Corp. "suspended his account" because it "discriminate[s] against 'Palestinians, Arabs, Muslims, and Diaspora Jews'"); *Murphy v. Twitter, Inc.,* 60 Cal. App. 5th 12, 29 (2021) (Section 230 barred claim based on account suspension and allegations that "[X Corp.] 'enforced its Hateful Conduct Policy in a discriminatory and targeted manner.'"); *King v. Facebook, Inc.*, 2019 WL 4221768, at *1 (Section 230 barred Section 1981 claim where plaintiff alleged

Facebook "violated its [Terms of Service] in removing his posts and suspending his account, and . . . treats black activists and their posts differently than it does other groups, particularly white supremacists").

In sum, all three requirements for Section 230 immunity are met, and dismissal may be affirmed on the basis that Section 230 affords X Corp. immunity from this suit.

<u>d.</u>    <u>Section 230 Is Constitutional</u>

Hall argues X Corp. "cannot use" Section 230 here because it is unconstitutional based on three theories, all of which fail: (1) Section 230 is "unconstitutionally vague, overbroad and viewpoint discriminatory on its face," and therefore violates both the First Amendment of the U.S. Constitution and New Hampshire's corollary, Part I, Article II of the New Hampshire Constitution (AOB at 27-28 ¶¶ 36-40); (2) Section 230 "conferred" on X Corp. the "sovereign power to regulate speech" as a state actor, which unconstitutionally "overrode" First Amendment and due process rights (AOB at 28-29 ¶¶ 41-43); and (3) Congress exceeded its authority under the

Commerce Clause in enacting Section 230 (AOB at 30 ¶¶ 45-47).[11]
These theories are contrary to the plain letter of Section 230,
unsupported by any law, and do not change the conclusion that Section
230 provides X Corp. immunity from Hall's claims.

### i)    Section 230 Is Clear and Does Not Restrict Speech

The portions of Section 230 identified by Hall as "vague,
overbroad and viewpoint discriminatory"—the phrases "taken in good
faith," "otherwise objectionable," and "lewd, lascivious, filthy,
excessively violent, harassing" (AOB at 27-28 ¶ 34)—are all found in
section 230*(c)(2)(A)*. These statutory standards are irrelevant here
because the bases for immunity here are sections 230(c)(1) and
230(e)(3)—and they do not contain those phrases.[12] *See* 47 U.S.C.

---

[11] In connection with this argument, Hall asserts the district court
"errored in law [sic] in finding that . . . § 230 is not unconstitutional."
AOB at 27, ¶ 35. The district court did not rule on that issue.

[12] Section 230(c)(2) provides complementary immunity, not invoked
here. 47 U.S.C. § 230(c)(2); *see Barnes*, 570 F.3d at 1105 ("Subsection
(c)(1), by itself, shields from liability all publication decisions, whether
to edit, to remove, or to post, with respect to content generated entirely
by third parties. Subsection (c)(2), for its part, provides *an additional
shield from liability*, but only for 'any action voluntarily taken in good
faith to restrict access to or availability of material that the provider . . .
considers to be obscene . . . or otherwise objectionable.' . . . Crucially, the
persons who can take advantage of this liability shield are not merely

§§ 230(c)(1) & 230(e)(1); *Lewis*, 461 F. Supp. 3d at 952 ("Plaintiff

alleges that § 230 is unconstitutional 'because the statute doesn't

define any of the terms included under §[230](c)(2)(A), such as:

"harassing, obscene, lewd, lascivious, filthy, excessively violent,

objectionable."' . . . It appears as though Plaintiff contends that

§ 230(c)(2) is unconstitutional. However, . . . Plaintiff's claims are

barred based on § 230(c)(1), not subdivision (c)(2)."); *see also Ziencik v.*

*Snap, Inc.*, 2023 WL 2638314, at *3 n.5 (C.D. Cal. Feb. 3, 2023)

(disregarding section 230(c)(2)(A) arguments because "Defendant does

not raise section 230(c)(2)(A) as a defense"). Hall does not identify any

purportedly vague, overbroad, or viewpoint discriminatory language in

any other provision of Section 230.

Even taking Plaintiff's argument to mean Section 230(c)(1) is

vague or overbroad because it "fails to provide people" notice of "what

conduct it prohibits," or is viewpoint-discriminatory (AOB at 27-28

¶¶ 37-38), it is nonsensical because, as set forth in Argument, Section

---

those whom subsection (c)(1) already protects, but any provider of an
interactive computer service. . . . Thus, even those who cannot take
advantage of subsection (c)(1), perhaps because they developed, even in
part, the content at issue . . . can take advantage of subsection (c)(2).")
(emphasis added) (citations omitted).

I.B.3.b.i, *supra*, "this provision does not ban or restrict any speech;" it merely states a provider shall not be "treated as the publisher or speaker" of third-party content. *Lewis*, 461 F. Supp. 3d at 953; 47 U.S.C. § 230(c)(1).

In sum, Hall fails to identify any provision in Section 230 restricting speech or requiring X Corp. to restrict speech, let alone any impermissibly vague, overbroad, or viewpoint-discriminatory provision doing so. Thus, his argument that Section 230 is unconstitutional on these bases should be rejected. *See Lewis*, 461 F. Supp. 3d at 952-53 (rejecting argument that Section 230 violates the First Amendment because it restricts [Plaintiff's] speech, and therefore "Plaintiff has not shown that that Defendants are precluded from raising § 230(c)(1) as a defense to Plaintiff's claims").

### ii) Section 230 Does Not "Confer" Any "Sovereign Power" on X Corp.

For the reasons discussed in full in Argument, Section I.B.3.b.i, *supra*, Hall's contention that Section 230 "conferred" the "sovereign power" of "regulating speech" on X Corp. is wrong. Accordingly, Hall's collateral contention that Section 230 therefore "overrode" free speech and due process rights (AOB at 28-29 ¶¶ 41-42, 44) necessarily fails.

### iii) Congress Had Authority Under the Commerce Clause to Enact Section 230

The Commerce Clause confers on Congress the power "[t]o regulate Commerce . . . among the several States." U.S. Const., Art. I., § 8, cl. 3; *see also White v. Mass. Council of Constr. Emp'rs, Inc.*, 460 U.S. 204, 213 (1983) ("Commerce Clause is a grant of authority to Congress, and not a restriction on the authority of that body."). It provides Congress with broad authority to regulate online activity and platforms. *See*, *e.g.*, *U.S. v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004) ("Congress clearly has the power to regulate the internet, as it does other instrumentalities and channels of interstate commerce."). Section 230 was validly passed under that authority. *See Zeran*, 129 F.3d at 334 (Section 230 was a "clear" exercise of Congress's commerce power); *Green*, 318 F.3d at 472 n.4 ("in passing the legislation that became section 230, Congress properly exercised its power to regulate interstate commerce").

Hall's argument that Congress exceeded its Commerce Clause authority is premised on the already-debunked proposition that Section 230 "deputizes" X Corp. to "police and regulate free speech." AOB at 40 ¶ 45. For the reasons set forth in Argument, Section I.B.3.b.i., *supra*,

that is wrong. Hall's argument that Congress exceeded its authority in enacting Section 230 therefore fails.

In sum, Hall's constitutional challenges to Section 230 fail. No reason exists that Section 230's immunity does not apply here, and dismissal may be affirmed on this basis.

### 2. The First Amendment Bars Hall's Claims, Which Hall Does Not Oppose

This Court may affirm the district court's dismissal because the First Amendment bars Hall's claims, which challenge X Corp.'s editorial decisions about what content is disseminated on its platform, who may disseminate content, and how it enforces its content moderation policies. Hall did not oppose this argument in his AOB. He therefore has waived any opposition to it. *United States v. Tavares*, 849 F.3d 529, 530 (1st Cir. 2017) ("Because this argument was never raised below or on appeal, it is waived.").

Courts have recognized that "[l]ike a newspaper or a news network, [X Corp.] makes decisions about what content to include, exclude, moderate, filter, label, restrict, or promote, and those decisions are protected by the First Amendment." *O'Handley v. Padilla*, 579 F. Supp. 3d 1163, 1186–88 (N.D. Cal. 2022) (dismissing on First

Amendment grounds claims based in part on Twitter account suspension), *aff'd on other grounds sub nom. O'Handley v. Weber* 62 F.4th 1145 (9th Cir. 2023);[13] *see also id.* at 1188 (X Corp. "has important First Amendment rights that would be jeopardized by a Court order telling [X Corp.] what content-moderation policies to adopt and how to enforce those policies"); *NetChoice, LLC v. Attorney Gen, Fla.*, 34 F.4th 1196, 1213 (11th Cir. 2022) ("Social-media platforms exercise editorial judgment that is inherently expressive. When platforms choose to remove users . . . they engage in First Amendment-protected activity."); *Mac Isaac v. Twitter, Inc.*, 557 F.Supp.3d 1251, 1261 (S.D. Fla. 2021) (X Corp. "has a First Amendment right to decide what to publish and what not to publish" (internal quotation marks omitted)).

---

[13] In affirming *Padilla*, the Ninth Circuit acknowledged that "[w]hether social media companies' content-moderation decisions are constitutionally protected exercises of editorial judgment has divided [its] sister circuits recently," and did not reach the issue on appeal. 62 F.4th at 1156 n.1 (citing *NetChoice*, 34 F.4th 1196, *petition for cert. docketed* (U.S., Sept. 23, 2022, No. 22-277); and *NetChoice, LLC v. Paxton* (5th Cir. 2022) 49 F.4th 439, *petition for cert. docketed* (U.S. Dec. 19, 2022, No. 22-555)). Cert petitions are pending in the U.S. Supreme Court. *See id.*

As set forth in Argument, Section I.C.1, *supra*, Hall's claims seek to hold X Corp. liable for its editorial decision to suspend Hall's Twitter account, which is protected content moderation. The First Amendment therefore bars Hall's claims.

## II. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING HALL'S VARIOUS PRE- AND POST-JUDGMENT MOTIONS

The district court did not abuse its discretion in its November 30, 2022 Order, which rejected Hall's incorrect contention that because one of X Corp.'s California-barred attorneys was listed in the signature block of X Corp.'s Motion to Dismiss before she was admitted *pro hac vice*, (a) X Corp.'s motion was invalid; (b) X Corp. therefore did not timely respond to his Complaint, and (c) judgment should be entered in his favor. Doc. 124 at 2–5. As the district court correctly found, X Corp.'s New Hampshire-barred attorney—who was admitted to practice in the district court—signed the brief and filed it on X Corp.'s behalf. Doc. 124 at 6–7. Accordingly, there was no legally cognizable basis for the relief sought in any of Hall's various motions.

Hall's assorted theories stemming from this incorrect signature block argument, which undergird his motion for recusal and post-

50

judgment motions as well—*i.e.*, the "secretive" and "unofficial" *pro hac vice* "policies," "biased" judges, and "fraud" by X Corp.—fail for the same reason. No grounds existed for recusal, reconsideration, or relief under Rule 60(b), and therefore the district court did not abuse its discretion in denying those motions in its Recusal Order and Post-Judgment Order. Endorsed Order dated Nov. 23, 2022; Endorsed Order dated June 9, 2023.

### A.   Standard of Review

The district court's November 30, 2022 Order is reviewed for an abuse of discretion. *See Amoah v. McKinney*, 875 F.3d 60, 62 (1st Cir. 2017) ("We review a ruling granting a motion to strike for an abuse of discretion"); *Bixler v. Foster*, 596 F.3d 751, 761 (10th Cir. 2010) ("We review for an abuse of discretion the district court's denial of a motion for default judgment.").

The Recusal Order is also reviewed for an abuse of discretion. *Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438, 1460 (1st Cir. 1992) ("We review [the judge's] denial of the [appellant's] motion for his recusal under the abuse of discretion standard.") (citations omitted).

Likewise, Hall's Post-Judgment Order is reviewed for an abuse of discretion. *Markel Am. Ins. Co. v. Diaz-Santiago*, 674 F.3d 21, 32 (1st Cir. 2012) ("This Court reviews the district court's denial of post-judgment relief under Rule 59(e) for abuse of discretion."); *Giroux v. Fed. Nat. Mortg. Ass'n*, 810 F.3d 103, 106-07 (1st Cir. 2016) ("Given the district court's familiarity with the record and proceedings below, we review the district court's decision to grant or deny relief under Rule 60(b) for an abuse of discretion. . . . Moreover, this Court does not require that a district court provide an explanation when denying Rule 60 motions and has affirmed summary denials of these motions").

## B. The District Court Did Not Abuse Its Discretion in Its November 30, 2022 Order

The district court did not abuse its discretion in denying Hall's motions to strike, for default, and for default judgment, and in granting X Corp.'s motion to renew its motion to dismiss in its November 30, 2022 Order.[14] That order rejected Hall's erroneous contention that X

---

[14] Hall argues the district court "errored [sic] in Law when granting [X Corp.'s] motion to renew its [Motion to Dismiss] for the reasons set forth in Hall's Motion to Strike and Motion to Default above"—and the district court's correct reasoning in rejecting Hall's arguments applied equally to its decisions regarding all of those motions. *See* AOB at 33 ¶ 89.

Corp.'s Motion to Dismiss was invalid because one of X Corp.'s California-barred attorneys, who then had not been admitted *pro hac vice* in the district court, was listed in the signature block of that motion. Doc. 124 at 3–4; 5–7. Hall baselessly argues the November 30, 2022 Order was "part [of] the fraud upon the Court" X Corp. supposedly committed, facilitated by purported "illegal" *pro hac vice* policies implemented by Magistrate Judge Andrea K. Johnston of the district court. AOB ¶ 80.

Hall ignores that X Corp.'s New Hampshire-barred attorney, who is admitted to practice in the district court, signed X Corp.'s Motion to Dismiss. As the district court correctly found, Hall provided "no support for his theory that the court must strike a filing signed by a New Hampshire-barred attorney who is admitted to practice before this court . . . merely because it includes the name of an out-of-state attorney who was not yet admitted *pro hac vice*."[15] Doc. 124 at 6. Nor

---

[15] Hall attempts and fails to distinguish only one case cited by the district court in its opinion, *Wolford v. Budd Co.*, 149 F.R.D. 127, 130 (W.D. Va. 1993), with which the court buttressed its conclusion (in *dicta*) that had X Corp.'s California-barred attorney signed the brief, the court *still* would have denied Hall's motion to strike. Hall contends *Wolford* did not address "illegality under N.H. law and fruits of fraud." AOB at 31 ¶ 83. Hall's purported distinction is beside the point because

could he—as the district court noted, "a district court has broad

discretion to control its own docket." *Id.* at 6 (quoting *Powe v. Boykins*,

810 F. App'x 331, 331-32 (5th Cir. 2020)). The district court did not

abuse its discretion in its November 30, 2022 Order.

## C.   The District Court Did Not Abuse Its Discretion in Its Recusal Order

The district court did not abuse its discretion by denying Hall's

Motion for Recusal, holding the motion "fail[ed] to raise any cognizable

legal or factual basis that would require . . . recusal." Endorsed Order

dated November 23, 2022. Hall argues the district court "errored in law

[sic] under the standard of § 144 and § 455(a)," and Judge Elliott

should have been disqualified because she "has a personal bias or

---

the *Wolford* court did not base its decision on the substance of the
claims alleged. *Wolford* permitted a complaint "signed by an attorney
not admitted to practice in the state," noting it was "in accordance with
decisions of numerous other federal courts who have refused to dismiss
pleadings or motions filed by attorneys not admitted to practice before
the court" *based on courts' discretion to control their dockets. See* Doc.
124 at 6 (emphasis added). *Wolford* supports the district court's point,
and in any case, does not affect its holding denying Hall's motion,
where X Corp.'s New Hampshire-based attorney signed the brief. *See*
Doc. 124 at 6–7 (citing cases).[16] Hall now argues: "Judge Elliott was
disqualified under 26 [sic] U.S. Code sec. 455 at the time she entered
each of her orders." AOB at 28 ¶ 73. For the same reasons set forth in
this Section, that argument fails.

prejudice either against him or in favor of [X Corp.]." AOB at 47 ¶ 96. Hall fails to identify any abuse of discretion in Judge Elliott's decision not to recuse herself.

"Under sections 144 and 455(a) and (b)(1), there are two possible grounds for a judge's disqualification: (1) the judge's impartiality may reasonably be questioned; or (2) the judge may have a personal bias or prejudice concerning a party. . . . To require disqualification, the alleged bias or prejudice must be both '(1) personal, *i.e.*, directed against a party, and (2) extrajudicial.'" *U.S. v. Kelley*, 712 F.2d 884, 889 (1st Cir. 1983) (citations omitted); 28 U.S.C. §§ 144, 455.

Hall argues recusal was required based on his speculation that Judge Elliott: (1) voted to reappoint Magistrate Judge Johnston to another term or participated in her reappointment proceedings, and (2) in doing so, reviewed Hall's submission to the Merit Selection Panel to be considered in the reappointment proceedings, in which he apparently complained about Magistrate Judge Johnston's purported "illegal" *pro hac vice* policies. AOB at 45-46 ¶ 93; *id.* at 46 ¶ 95. Hall's bald speculation regarding these issues, and that Judge Elliott could not rule impartially based on them, is not sufficient evidence of bias or

55

prejudice, or that her "impartiality might reasonably be questioned," as required to support recusal under Sections 144 and 455. *See*, *e.g.*, *J.P.E.H. v. Hooksett Sch. Dist.*, No. CIV. 07-CV-276-SM, 2009 WL 703238, at *1 (D.N.H. Mar. 18, 2009) ("Plaintiff's unsupported belief that [he] is the victim of bias is not evidence of bias."); *see also Kelley*, 712 F.2d at 891 ("the connection between [the basis for recusal] . . . is too tenuous, and the proceedings are too remote, to create a reasonable doubt about [the judge's] impartiality toward [plaintiff]. Hence, it was not error for [the judge] to … refus[e] to disqualify himself").

Even crediting Hall's allegations that Judge Elliott had knowledge of the facts of his case or his complaints about Magistrate Judge Johnston before entering any order in this matter, those allegations are insufficient to establish that recusal was required. *See Logue v. Dore*, 103 F.3d 1040, 1046 (1st Cir. 1997) (recusal unnecessary even where judge called plaintiff "an absolute and incorrigible liar" on the record).

Additionally, despite Hall's argument that Judge Elliott's supposed knowledge requiring recusal was acquired on a purported "extra-judicial" reappointment commission, Hall admits it was a

commission formed pursuant to 28 U.S.C. § 631—*i.e.*, a judicial commission formed pursuant to judicial procedure. *See* AOB at 44 ¶ 90 n. 11 (citing 28 U.S.C. § 631). In other words, even taking as true the allegations that Judge Elliot knew about Hall's submission to the commission, her knowledge was "indisputably obtained . . . during the performance of [her] judicial duties," and therefore "cannot serve as a basis for disqualifying [her] on grounds of personal bias." *Kelley*, 712 F.3d at 889-90.

"[J]udges are not to recuse themselves lightly," *U.S. v. Snyder*, 235 F.3d 42, 45 (1st Cir. 2000), and Hall has not shown Judge Elliott abused her discretion by declining to recuse herself.[16] *See*, *e.g.*, *J.P.E.H.*, 2009 WL 703238, at *1 ("A judge has as strong a duty not to recuse when recusal is inappropriate as to recuse when it is.").

---

[16] Hall now argues: "Judge Elliott was disqualified under 26 [sic] U.S. Code sec. 455 at the time she entered each of her orders." AOB at 28 ¶ 73. For the same reasons set forth in this Section, that argument fails.

**D.  The District Court Did Not Abuse Its Discretion in Its Post-Judgment Order**

Hall rehashes his same failed arguments in asserting his Post-Judgment Order requires reversal—but, again, he identifies no abuse of discretion by the district court.

> *1.  The District Court Properly Denied Hall's Motion for Reconsideration*

The district court correctly denied Hall's Rule 59(e) "Motion for Reconsideration," which sought reconsideration of the district court's Recusal Order, the November 30, 2022 Order, and the Order on the Motion to Dismiss. Doc. 141.

As an initial matter, Hall's "motion for reconsideration" was procedurally defective. Federal Rule of Civil Procedure 59(e) does not authorize a "motion for reconsideration" (nor does any other federal statute); rather, it authorizes a motion to "alter or amend a judgment." *Id.*

Moreover, even if taken as a motion to alter or amend the judgment, the motion did no more than attempt to relitigate the very issues on which the district court already ruled in the Recusal Order, the November 30, 2022 Order, and the Order on the Motion to

Dismiss—repackaging his complaints as "errors of law" and "errors of fact." *See* Doc. 141. Rule 59(e) does not permit relief under these circumstances: "Rule 59(e) permits a court to alter or amend a judgment, but it 'may not be used to relitigate old matters.'" *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) (citation omitted); *Diaz-Santiago*, 674 F.3d at 32 (to prevail on a Rule 59(e), the moving party must "clearly establish" its grounds, "manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, [or] an intervening change in controlling law. . . . Notably, a party moving for Rule 59(e) relief may not repeat arguments previously made") (cleaned up).

Hall's Rule 59(e) motion did not make any new arguments, let alone identify any grounds to alter or amend the judgment. Thus, the district court did not abuse its discretion by denying Hall's motion in the Recusal Order.

> ## 2. *The District Court Properly Denied Hall's Rule 60(b) Motions*

The district court correctly denied Hall's two Rule 60(b) Motions to Void Judgment. Doc. 142 and 143.

Federal Rule of Civil Procedure 60(b) provides:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Hall's first Rule 60(b) motion (Doc. 142) sought relief from (1) the November 30, 2022 Order (Doc. 124); and (2) the Dismissal Order (Doc. 139). Neither of these orders constitutes a "final judgment, order, or proceeding," from which relief under Rule 60(b) may be sought. *See* Fed. R. Civ. P. 60(b). Thus, the district court did not abuse its discretion in denying his procedurally defective first Rule 60(b) motion. *See id.*

Hall's second Rule 60(b) motion (Doc. 143) sought to void "all the Court's Orders and Judgments." *Id.* ¶ 1. The district court did not abuse its discretion in denying that motion, where "all the Court's Orders and Judgments" are not a "final judgment, order, or proceeding" from which relief under Rule 60(b) may be sought, and thus this motion was procedurally defective. *See* Fed. R. Civ. P. 60(b).

Additionally, Hall's motion sought to relitigate past orders and did not establish that any of the enumerated grounds for Rule 60(b) relief existed. *See* Doc. 143. The district court did not abuse its discretion by denying Hall's Rule 60(b) motion under these circumstances. *See Cofield v. Fed. Nat. Mortg. Ass'n*, 125 F.3d 841 (1st Cir. 1997) ("Fed. R. Civ. P. 60(b) does not permit a party to []litigate . . . issues that the party had a fair opportunity to litigate").

Hall argues the Post-Judgment Order was wrongly decided based on a slew of accusations, all of which stem from: (1) his refuted argument that an "illegal policy" or "fraud" underlies the district court's acceptance of X Corp.'s Motion to Dismiss where it included the name of an attorney in its signature block who had not yet been admitted *pro hac vice*; and (2) his unsubstantiated claims of judicial bias.[17] *See* AOB at 29-30 ¶¶ 76 ("illegal policies," X Corp.'s "fraud"), ¶ 77 ("illegal policy," "pattern of fraud"), ¶ 78 ("illegal policy and bias"). For the same reasons set forth in Argument, Sections II.B and II.C,

---

[17] Hall's repeated accusations of X Corp.'s alleged "pattern of fraud" are baseless. *See* AOB at 41 ¶¶ 76, 77. Hall does not identify any misrepresentations made by X Corp., and his criticisms of X Corp.'s legal arguments do not point to any purported "fraud." Doc. 143 at 1, 7–10.

*supra*, these failed arguments do not show the district court abused its discretion in its Post-Judgment Order.

In sum, Hall has not shown any abuse of discretion in the district court's denial of his post-judgment motions in the Post-Judgment Order.

## **CONCLUSION**

This court should affirm the judgment of the district court.

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and this Court's "Appellant's Briefing Notice" issued July 17, 2023, I certify this brief complies with the typeface and length limitations set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,728 words, excluding the parts of the brief exempted from the word count. I also certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word, Century Schoolbook, 14 font.

*/s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison

## **CERTIFICATE OF SERVICE**

I certify that on September 27, 2023, I served the

foregoing Defendant-Appellee's Brief and counsel of record via

the Court's electronic filing system.


*/s/ Kenneth M. Trujillo-Jamison*
Kenneth M. Trujillo-Jamison